# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BISTRO OF KANSAS CITY, MO., LLC, | * |
| Plaintiff, | * |
| v. | * |
| KANSAS CITY LIVE BLOCK 125 RETAIL, LLC, | * |
| Defendant. | * Civil Action No. 1:10-CV-02726-JFM |
| * * * * | * |
| KANSAS CITY LIVE BLOCK 125 RETAIL, LLC, | * |
| Counter-Plaintiff, | * |
| v. | * |
| BISTRO OF KANSAS CITY, MO., LLC, et al., | * |
| Counter-Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF MICHAEL MORRIS

Michael Morris, pursuant to 28 U.S.C. §1746, deposes and says:

1. I am more than 18 years of age, am competent to be a witness in this matter, and I make this declaration on personal knowledge of its contents. At present, I reside in Baltimore County, Maryland, and I have my business office there. At all times relevant to the above-captioned case, I have lived in the Baltimore metropolitan area. From December of 2001 until January of 2008, I was Director of Leasing and Development for The Cordish Company based at The Cordish Company's office in The Power Plant, 601

E. Pratt Street, 6th Floor, Baltimore, Maryland 21202. One of the Cordish-related entities for which I obtained tenants and negotiated leases during that time period was Kansas City Live Block 124 Retail LLC ("KC Live").

2.  In the 2004-05 time period, I became acquainted with Counter-Defendant Roberto Ruggeri, Jr., and the "Bice" restaurant group that he operated and controlled which had a number of Italian-themed restaurants in the United States and in other countries. Mr. Ruggeri told me that he was interested in the possibility of placing one or more of his Bice restaurants in existing, or to-be-developed, projects of The Cordish Company. He asked if he could meet with me and other Cordish Company development personnel at The Cordish Company's Baltimore office, and he also wanted to see the Baltimore Power Plant Live! facilities that The Cordish Company had developed in Baltimore. I no longer recollect the date, but Mr. Ruggeri did visit The Cordish Company and tour its Power Plant and Power Plant Live! facilities in Baltimore. He asked me to keep him advised regarding Cordish Company projects throughout the United States, and he and I, in Baltimore, remained in intermittent e-mail and telephone contact.

3.  By early 2006, Mr. Ruggeri was negotiating with me in Baltimore about a potential restaurant premises for a Bice restaurant at KC Live in Kansas City, and his negotiations with me reached the point that Robert Fowler, Esq., an in-house attorney for The Cordish Company in Baltimore, began drafting a proposed lease for Ruggeri and his associates to consider. That deal foundered, but Mr. Ruggeri continued to stay in contact with me in Baltimore regarding existing or potential projects in places like Maryland, Florida, and Virginia, as well as Kansas City.

4.  As of August, 2006, Mr. Ruggeri and I refocused on a potential Bice restaurant to be a tenant in the KC Live project in Kansas City, including discussion of the type of guarantees that KC Live would

2

require, as landlord, of any restaurant lease into which it entered. By October, 2006, negotiations had proceeded to the point that I sent to Mr. Ruggeri, on KC Live stationary showing KC Live Baltimore City address at The Cordish Company, a letter of intent outlining the basic terms for such a lease and accompanying guaranty. As was my practice, the letter was intended to elicit a response by way of a conceptual agreement from Mr. Ruggeri, and Mr. Ruggeri did, in fact, tell me that he wanted to proceed to the next stage of lease drafting, drawings, and construction details. In November, 2006, Mr. Fowler, on KC Live's Baltimore City letterhead, sent Mr. Ruggeri a draft lease for a Bice Bistro restaurant at The Kansas City Power & Light District project. Deal negotiations at that point were handled by Mr. Ruggeri, an associate of his, Trevor Sacco, and the California lawyer for Mr. Ruggeri and his Bice restaurant group, Tim Pickwell, Esq. On the Cordish side, Mr. Fowler and I, operating out of Baltimore, had primary lease-negotiation responsibility for KC Live. Mr. Ruggeri also had his accountant send me in Baltimore, financial information on the Bice restaurant group.[1]

5. The lease negotiations were a protracted process, and, by January of 2007, Mr. Ruggeri had expressed an interest in a second Bice "gelateria" at KC Live in addition to the restaurant facility. As to the restaurant, Mr. Fowler sent Mr. Ruggeri four "execution copies" of the proposed restaurant lease and guarantees of that lease to be given by an entity identified by Mr. Ruggeri as Bice Group, Inc., which Mr. Ruggeri said was the "holding company" for the Bice Group restaurants, and by Mr. Ruggeri himself. Mr. Fowler's cover letter to Mr. Ruggeri that accompanied the lease documents showed the Kansas City Live

---

[1] The financial information was e-mailed to me at my Cordish Company Baltimore City address at Mr. Ruggeri's e-mail direction to David Boon of MSRE, Inc., on December 13, 2006. Among other things Mr. Boon's e-mail revealed that the Bice restaurant group was operating 14 restaurants in the United States as of year-end 2005.

3

landlord entity as having its offices with The Cordish Company in Baltimore City. To consummate the deal, Mr. Ruggeri was to execute the lease on behalf of the tenant entity Bistro, the Bice Group guaranty, and his own personal guaranty of the lease. Those documents were to be delivered, as signed, to KC Live's Baltimore office, and the transaction would consummate and become binding upon the parties once the lease was signed in Baltimore by Blake Cordish, the "authorized person" for KC Live. That is what occurred on March 27, 2007, when Blake Cordish signed, in Baltimore, the lease that is Exhibit A to KC Live's counterclaim, which signing was witnessed in Baltimore by Mr. Fowler. Mr. Fowler then, on April 4, 2007, sent the fully-executed lease back to Mr. Ruggeri by way of Mr. Ruggeri's lawyer, Mr. Pickwell.

6.  My negotiations, from my Baltimore office, with Mr. Ruggeri then continued through telephone and e-mail contact that I had with Mr. Ruggeri, his agent Mr. Sacco, and his lawyer Mr. Pickwell, and, once again, lease drafting for KC Live was handled by Mr. Fowler from KC Live's Baltimore office at The Cordish Company. Mr. Fowler, on April 13, 2007, from the Baltimore office, sent Mr. Pickwell a draft lease for the KC Live gelateria. Negotiations continued through August, 2007, between Mr. Fowler and myself, in Baltimore, and Messrs. Ruggeri, Sacco, and Pickwell, finally resulting, on August 27, 2007, in Mr. Fowler sending, from Baltimore, execution copies of the agreed-upon gelateria lease and guarantees to Ruggeri at his New York City office address. The same execution sequence was utilized for that lease. Ruggeri was to execute lease and the guarantees and to then return them to Mr. Fowler and myself in Baltimore where the lease would then be signed for KC Live by Blake Cordish, as KC Live's "authorized person." Only then would the transaction be consummated and binding upon the parties. On September 18, 2007, Mr. Pickwell returned the gelateria lease and guarantees, as signed by Mr. Ruggeri, to Mr. Fowler in Baltimore with a letter that instructed Mr. Fowler to send the fully-executed lease back to Mr. Ruggeri at

Mr. Ruggeri's Florida office. October 1, 2007, Blake Cordish, as KC Live's "authorized person," signed the gelateria lease in Baltimore, consummating the transaction and binding the parties. It is that lease with accompanying guarantees which is Exhibit B to KC Live's counterclaim. Mr. Fowler then sent the fully-executed lease to Ruggeri under cover of an October 1, 2007, letter on KC Live's address at The Cordish Company in Baltimore.

7.   Roberto Ruggeri remained in contact with me in Baltimore thereafter, expressing an interest in potential Bice restaurant locations in other Cordish Company projects. I left The Cordish Company in January, 2008, and I had no further involvement in the matters that are at issue in this case.

I declare, under the penalties of perjury and pursuant to 28 U.S.C. §1746, that the foregoing declaration is true and correct.

Executed on: December 22, 2010

Michael Morris

K19227

5