# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BISTRO OF KANSAS CITY, MO., LLC, | * |
| Plaintiff, | * |
| v. | * |
| KANSAS CITY LIVE BLOCK 125 RETAIL, LLC, | * |
| Defendant. | * Civil Action No. 1:10-CV-02726-JFM |
| * * * * | * |
| KANSAS CITY LIVE BLOCK 125 RETAIL, LLC, | * |
| Counter-Plaintiff, | * |
| v. | * |
| BISTRO OF KANSAS CITY, MO., LLC, et al., | * |
| Counter-Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DECLARATION OF NICK BENJAMIN
---

Nick Benjamin, pursuant to 28 U.S.C. §1746, deposes and says:

1.   I am more than 18 years of age, am competent to be a witness in this matter, and I make this declaration on personal knowledge of its contents. From February 18, 2008 until August 23, 2009, I lived in Maryland, and my office was at The Cordish Company's office at The Power Plant in Baltimore City. During the February, 2008, to August, 2009, period, I worked in Baltimore primarily as The Cordish Company's Development Director for the Kansas City Live! project in Kansas City, Missouri.

2. After Michael Morris left The Cordish Company in January, 2008, I took on his responsibilities for the KC Live! project. In that capacity, I became acquainted with Roberto Ruggeri, Jr., and the two Bistro of Kansas City, MO., LLC, ("Bistro") tenancies regarding the landlord-tenant relationship between Kansas City Live Block 125 Retail, LLC ("KC Live"), as landlord, and Bistro of Kansas City, MO., LLC, as tenant.

3. My primary contact with Mr. Ruggeri during the February, 2008, through August, 2009, period, when I was based in The Cordish Company's Baltimore City office, related to a July 24, 2008, amendment to the Bistro restaurant lease, a copy of which is attached hereto as Ex. A, and negotiations with Mr. Ruggeri about Bistro's breach of its leases with KC Live which resulted in the June 5, 2009, amendment to both of Bistro's KC Live leases, a copy of which is included in Ex. B hereto. In both instances, Mr. Ruggeri dealt with me in Baltimore primarily by e-mail directed to me at my Baltimore City address for The Cordish Company, and, in both instances, I worked with Robert Fowler, Esq., The Cordish Company's in-house attorney, who was acting as KC Live's attorney in drafting lease language and whose office was also in The Power Plant in Baltimore City.

4. The July 24, 2008, amendment to the Bistro restaurant lease was sent to Mr. Ruggeri for him to sign on behalf of Bistro, as tenant, and on behalf of Bice Holding, Inc., and himself as guarantors of the lease. Mr. Ruggeri did sign the amendment in all three capacities, and, in his guarantor capacities, he affirmed and ratified the October 17, 2006, Lease, which is Exhibit A to KC Live's counterclaim, and his and Bice Holding, Inc.'s guarantees of that lease. He returned the amendment, as signed by him, to Mr. Fowler and myself in Baltimore where it was then signed, on or about February 24, 2009, in Baltimore by KC Live's "authorized person," Blake Cordish, which consummated that transaction and made the

amendment binding on the parties. Mr. Fowler, under cover of a letter that bears KC Live's Baltimore City address, then returned a fully-executed original of this amendment to Trevor J. Sacco, who was then styling himself as the Chief Operating Officer of Bice Restaurant Group, as well as to Mr. Ruggeri's California attorney, Timothy Pickwell, Esq.

5. By November of 2008, Bistro was in default on its leases, having failed to pay to KC Live the rent it was required to pay to KC Live in Baltimore. From my Baltimore office, I communicated with Messrs. Ruggeri and Sacco, and, in December, 2008, Mr. Ruggeri asked for a meeting at the Baltimore City address of KC Live and The Cordish Company with Blake Cordish and myself to attempt to resolve the lease default issues. Such a meeting did take place, as requested by Mr. Ruggeri, in Baltimore in The Cordish Company and KC Live office at The Power Plant. The meeting was attended by Blake Cordish and myself and Messrs. Ruggeri and Sacco. After the Baltimore meeting in January, 2009, discussion continued regarding terms that would be satisfactory to KC Live to resolve the rent-default issue. Those negotiations and discussion involved me, Mr. Fowler, and Mr. Blake Cordish, among others, in Baltimore, and Messrs. Ruggeri, Sacco, and others for the Bistro entity and the two guarantors. In March of 2009, Mr. Ruggeri advised me, Mr. Fowler, and Blake Cordish that Mr. Ruggeri's effort to obtain a loan in Italy to fund his restaurant operations had been unsuccessful. I told Mr. Ruggeri that KC Live would initiate legal proceedings against Bistro for its breach of the leases. Settlement discussion then continued through June 5, 2009, when Bistro tendered settlement checks to KC Live in Baltimore together with an amendment to the two leases that was signed by Mr. Ruggeri on behalf of Bistro, Bice Holding, Inc., as guarantor, and Mr. Ruggeri himself in his role as guarantor. See Ex. B hereto. By way of the "consent and ratification" found at Bates No. 001181 of Ex. B, Mr. Ruggeri affirmed and ratified the October 17, 2006, and October 1, 2007,

3

leases, and he also affirmed and ratified that he personally remained liable to KC Live under his guaranty of each of these leases.

I declare, under the penalties of perjury and pursuant to 28 U.S.C. §1746, that the foregoing declaration is true and correct.

Executed on: December 21, 2010

_____
Nick Benjamin

K19229

4

# EXHIBIT A

# Kansas City Live Block 125 Retail, LLC

The Cordish Company
The Power Plant
601 East Pratt Street, 6th Floor
Baltimore, MD 21202
Main: 410-752-5444
Fax: 410-659-9491
E-mail: BOB@cordish.com

February 24, 2009

**VIA Federal Express**

Trevor Sacco
Bice Bistro
5483 Valerio Trail
San Diego, CA 92130

        Re:    Lease Agreement dated March 27, 2007 by and between
                 Kansas City Live Block 125 Retail, LLC ("Landlord") and
                 Bistro of Kansas City, MO, LLC ("Tenant") – Amendment for Deck

Dear Mr. Sacco:

Enclosed is a fully executed original of the *Amendment to Lease*.

Very truly yours,

Robert C. Fowler

RCF/sjp

enclosure

cc:    Tim Pickwell, Esq. (w/enclosure)
       Tim Pickwell & Associates, P.C.
       11975 El Camino Real, Suite 200
       San Diego, CA 92130

bcc: Estella
       Jason
       Alan H
       Zed S
       Jon Stephens

**000756**

## AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE (this "Agreement") made as of the 24th day of July, 2008, by and between Kansas City Live Block 125 Retail, LLC (hereinafter called "Landlord"), and Bistro of Kansas City, MO., LLC (hereinafter called "Tenant").

## W I T N E S S E T H

WHEREAS, Landlord and Tenant have heretofore entered into a Lease (the "Lease") dated March 27, 2007, for certain Premises in Kansas City, Missouri; and

WHEREAS, Landlord and Tenant mutually desire to amend the Lease in certain particulars.

NOW, THEREFORE, in consideration of the Premises, the mutual covenants hereinafter contained and for other good and valuable consideration by each of the parties hereto to the other in hand paid, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1. Deck: The parties acknowledge that there is a deck area adjacent to the second level of the Premises (the "Deck"). The Deck is not part of the Premises under the Lease and is not part of the Outdoor Seating Area under the Lease. Landlord has agreed, however, to permit Tenant to use the Deck subject to the provisions hereof. The Deck shall be used primarily as a wine and martini bar, serving outstanding Italian wines by the glass, Bice signature drinks, and a cosmopolitan martini list, with limited lunch and dinner service. Cigars may be offered. A Sunday brunch is permitted. Use of the Deck in connection with private parties is permitted. Any music shall be subject to Landlord's approval in its sole and absolute discretion. Music shall be background music only. Live music shall be solo musician and piano or Flamenco guitar or the like. Music shall not be audible beyond the Deck. Under no circumstances shall there ever be a DJ. Under no circumstances shall the Deck ever be used by a promoter. The Deck shall be closed no later than midnight each night. While the Deck is not part of the Premises, all obligations of Tenant under the Lease as to the Premises shall apply to the Deck except payment of Rent, but Gross Sales from the Deck shall constitute Gross Sales under the Lease. The provisions of the Outdoor Seating Area of the Lease shall also apply to the Deck even though the Deck is not Outdoor Seating Area under the Lease. Landlord shall have the right to cancel Tenant's rights to use the Deck at any time by notice to Tenant, effective as set forth in the notice.

2. Miscellaneous: All other terms and conditions of said Lease shall remain and continue in full force and effect and shall be deemed unchanged except to the extent provided herein. All terms used in this Agreement shall have the meanings ascribed to them in the Lease, unless otherwise defined herein. This Agreement shall govern in the event of an inconsistency between this Agreement and the Lease. Tenant hereby agrees, acknowledges, represents and warrants that the Lease is in full force and effect and that Landlord not in default or breach of any of its obligations under the Lease

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have executed this Agreement as of the day and year first above written.

WITNESS:                                              Landlord: Kansas City Live Block 125 Retail, LLC

*(signature: Robert O'Brien)*

By: *(signature)*
Name: Blake Cordish
Title: Authorized Person

WITNESS:                                              Tenant: Bistro of Kansas City, MO., LLC

By: *(signature)*
Name:
Title:

## CONSENT AND RATIFICATION

The undersigned, each a guarantor of the Lease, hereby consents to the foregoing Amendment To Lease and hereby affirms and ratifies the Lease dated October 17, 2006, and his/her Guaranty, and remains liable under his/her Guaranty to said Lease.

WITNESS:                                              GUARANTORS:
                                                      Bice Holding, Inc.

By: *(signature)*
Name:
Title:

*(signature)*
Robert Ruggeri

# EXHIBIT B

6/5/09



STINSON
MORRISON
HECKER LLP

Jere D. Sellers
(816) 691-3190
jsellers@stinson.com
www.stinson.com

1201 Walnut, Suite 2900
Kansas City, MO 64106-2150

Tel (816) 842-8600
Fax (816) 412-8195

June 5, 2009

**Picked-up by Client**

Nick Benjamin
Cordish Company
601 East Pratt Street, 6th floor
Baltimore, MD 21202

   Re: Bistro of Kansas City, Missouri, LLC d/b/a Bice checks

Dear Nick:

  Enclosed are settlement checks which we have been holding in our files awaiting approval from the tenant's attorney to tender to your attention. There is also a copy of the settlement agreement. Once Cordish signs it please make sure we receive a fully executed copy. With the receipt of these checks and settlement agreement, the pending matter in Jackson County Associate Circuit Court will be dismissed.

  Thank you for letting us be of assistance in this matter. Please contact Zach Hemenway at (816) 691-2647 or me at (816) 691-3190 if you have any questions or concerns.

           Sincerely,

           STINSON MORRISON HECKER LLP

           Jere D. Sellers

JDS:ajk

Enclosures

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

DB04/802888.0031/1514395.1/CR09

**001178**

**INTERAUDI | BANK**  19 East 54th Street  New York, NY 10022

To Robin
w/ xpress

DATE: 05/08/2009    No. 059096
260

➪➪➪➪ PAY ONLY  USD 200,000.00

Two Hundred Thousand Dollars And No Cents

6/8/0?

OFFICIAL CHECK

Y TO THE   KANSAS CITY LIVE BOCK 125 RETAIL, LLC
DER OF

Authorized Signature

ference:   B/O ROBERTO RUGGERI / P545507
           RE: FOR SETTLEMENT
                                    VOID OVER $200,000.00
Authorized Signature

⑊"059096⑊"  ⑊:026006237⑊:40 200000⑊"

---

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD AT LIGHT TO VIEW

Bistro of Kansas City, MO, LLC
14 E. 14th Street
Kansas City, MO 64106
(816) 569-2310

Capital One
New York
Operating Account

1-791
214

CHECK No.
**000034**

| CHECK DATE | CHECK No. | AMOUNT |
|---|---|---|
| May 04, 2009 | 000034 | $20,000.00 |

PAY EXACTLY **$20,000dols00cts**
*TWENTY THOUSAND AND XX / 100

TO THE ORDER OF
**KANSAS CITY LIVE BLK 125 LLC**
601 E PRATT STREET
6TH FLOOR
Baltimore, MD 21202

PER  J. Sacco

⑊"000034⑊"  ⑊:021407912⑊:  6304001883⑊"

---

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD AT LIGHT TO VIEW

Bistro of Kansas City, MO, LLC
14 E. 14th Street
Kansas City, MO 64106
(816) 569-2310

Capital One
New York
Operating Account

1-791
214

CHECK No.
**000086**

| CHECK DATE | CHECK No. | AMOUNT |
|---|---|---|
| Jun 03, 2009 | 000086 | $20,000.00 |

PAY EXACTLY **$20,000dols00cts**
*TWENTY THOUSAND AND XX / 100

TO THE ORDER
**KANSAS CITY LIVE BLK 125 LLC**
601 E PRATT STREET
6TH FLOOR
Baltimore, MD 21202

PER  J. Sacco

⑊"000086⑊"  ⑊:021407912⑊:  6304001883⑊"

001177

**AMENDMENT TO LEASE**

THIS AMENDMENT TO LEASE (this "Agreement") made as of the ____ day of June, 2009, by and between Kansas City Live Block 125 Retail, LLC (hereinafter called "Landlord"), and Bistro of Kansas City, MO., LLC (hereinafter called "Tenant").

W I T N E S S E T H

WHEREAS, Landlord and Tenant have heretofore entered into a Lease dated March 27, 2007, as amended (the "Restaurant Lease"), for certain Premises in Kansas City, Missouri, and, Landlord and Tenant have heretofore entered into a Lease dated October 1, 2007 (the "Gelateria Lease"), for certain Premises in Kansas City, Missouri (the Restaurant Lease and the Gelateria Lease being hereinafter referred to as "the Lease" and all references shall refer to each of them and both of them except as otherwise provided); and,

WHEREAS, Landlord and Tenant mutually desire to amend the Lease in certain particulars.

NOW, THEREFORE, in consideration of the Premises, the mutual covenants hereinafter contained and for other good and valuable consideration by each of the parties hereto to the other in hand paid, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1. Minimum Rent and Extra Charges for February, March and April of 2009. Provided Tenant strictly (including timeliness) complies with the provisions of this Agreement, the total amount of Minimum Rent and recurring charges under the Lease shall be $26,000 for each of the months of February, March and April of 2009.

2. Past Due Rent. Excluding Rent due for the month of May, 2009 and excluding amounts due for periods prior to Tenant's Rent Commencement Date, Tenant owes Landlord additional sums in connection with the Lease in the amount of $596,574, which amount the parties agree constitute Additional Rent under the Lease. Tenant agrees to pay said $596,574 to Landlord by certified or bank treasurer's checks strictly in accordance with the following schedule: $200,000 upon full execution of this Agreement, and the balance in four equal installments of $99,143.50 each on November 30, 2009, January 30, 2010, March 30, 2010, and May 30, 2010.

3. Minimum Rent and Extra Charges for May, 2009 through December, 2009. Provided Tenant strictly (including timeliness) complies with the provisions of this Agreement, the total amount of Minimum Rent and recurring charges under the Lease shall be $20,000 for each of the months of May through December, 2009. The May payment shall be made in good funds upon full execution of this Agreement, and each other monthly payment shall be made in good funds and due on the first day of each such month and paid no later than the third day of each such month. Notwithstanding anything herein to the contrary, if the product of Tenant's Gross Sales times 10% exceeds $20,000 in any of

{10417/0001: 00163627.DOC.}

**001179**

these months, such excess shall be paid as Additional Rent within 5 days after the end of such month.

4. Termination Right for Gelateria Lease. Landlord and Tenant hereby agree that Landlord shall have a continuing right to terminate the Gelateria Lease upon written notice to Tenant ("Termination Notice") specifying the effective date of termination, which shall be no less than thirty (30) days and no more than one hundred twenty (120) days from the date of the Termination Notice ("Effective Date"). Upon the Effective Date, the Gelateria Lease shall term shall come to an end and Tenant shall vacate the Premises and leave all fixtures, trade fixtures, equipment and personal property used in the business and all such items shall be Landlord's property and shall be left free and clear of claims or liens except for equipment lease liens in existence and perfected as of May 1, 2009. No amounts due under this Agreement shall be affected by such termination.

5. If Tenant strictly (including timeliness) complies with the provisions of this Agreement, and strictly (including timeliness) complies with the provisions of the Lease as to the payment of Rent throughout the Term (except as modified hereby), Minimum Rent and recurring monthly charges due for periods prior to the Rent Commencement Date shall be waived. If Tenant fails to strictly (including timeliness) comply with the provisions of this Agreement, and/or if Tenant fails to strictly (including timeliness) comply with the provisions of the Lease as to the payment of Rent throughout the Term (except as modified hereby), Landlord in addition to any other remedies available under the Lease or the law, shall have the right to terminate the Lease or Tenant's right to possession of the Premises by notice to Tenant without the requirement of any default notice or cure period, all sums due under the Lease that were reduced or conditionally waived hereunder shall be immediately due and payable., and Landlord shall not be bound by any concessions made herein. Landlord acknowledges that Tenant and Guarantors dispute the amount of rent owed for periods prior to the Rent Commencement Date and nothing in this Agreement shall be construed as a waiver by Tenant and Guarantors of defenses related thereto. Notwithstanding anything to the contrary contained herein, once Tenant is again paying Rent as set forth in the Lease without regard to this Agreement (i.e., January, 2010), as to Minimum Rent and recurring charges due monthly under the Lease, notice and cure periods provided for nonpayment of Rent under the Lease shall apply, but such notice and cure periods have no applicability to sums due under this Agreement (including section 2 regardless of when due) and are waived by Tenant.

6. Miscellaneous: All other terms and conditions of said Lease shall remain and continue in full force and effect and shall be deemed unchanged except to the extent provided herein. All terms used in this Agreement shall have the meanings ascribed to them in the Lease, unless otherwise defined herein. All capitalized terms in this Agreement shall have the same meaning as set forth in the Lease. This Agreement shall govern in the event of an inconsistency between this Agreement and the Lease. Tenant hereby agrees, acknowledges, represents and warrants that the Lease is in full force and effect, and that Landlord is not in default or breach of any of its obligations under the Lease

{10417/0001: 00163627.DOC.}

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have executed this Agreement as of the day and year first above written.

WITNESS:                      Landlord: Kansas City Live Block 125 Retail, LLC

_____     By:_____
                                     Name:
                                     Title:

WITNESS:                      Tenant: Bistro of Kansas City, MO., LLC

_____     By: _/s/ R. Ruggeri_____
                                     Name: R. Ruggeri
                                     Title: CEO

## CONSENT AND RATIFICATION

The undersigned, each a guarantor of the Lease, hereby consents to the foregoing Amendment To Lease and hereby affirms and ratifies the Lease dated October 17, 2006 and October 1, 2007, and his/her Guaranty, and remains liable under his/her Guaranty to each said Lease.

WITNESS:                      GUARANTORS:
                                     Bice Holding, Inc.

_____     By: _/s/ R. Ruggeri_____
                                     Name:
                                     Title:

_____     _/s/ Roberto Ruggeri_____
                                     Roberto Ruggeri

{10417/0001: 00163627.DOC.}